IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERESA HESTEKIN,

Plaintiff,

v.

FRED BELAY, THE TOWN OF UNION, BEKAH WEITZ, THE EAU CLAIRE COUNTY HUMANE SOCIETY, JODI S. BOHL, and CYNTHIA MATHER,

Defendants.

OPINION AND ORDER

17-cv-869-wmc

---

Plaintiff Teresa Hestekin asserts that defendants unlawfully executed a search warrant in violation of her Fourth Amendment rights.[1] Before the court are defendants' motions for summary judgment. (Dkt. ##42, 48.) For the reasons that follow, the court will grant defendants' motions.

## UNDISPUTED FACTS[2]

### A. The Parties

For all times relevant to plaintiff's complaint, plaintiff Teresa Hestekin operated a kennel, Hestekin Hills Animal Shelter & Pet Adoption Services, Inc., in the Town of Union, Eau Claire County, Wisconsin, and defendant Bekah Weitz served as that County's

---

[1] In a prior opinion and order, the court dismissed plaintiff's claims based on the seizure and disposal of animals, finding those claims barred by the *Rooker-Feldman* doctrine. (12/4/18 Op. & Order (dkt. #69).) Moreover, in her opposition brief to defendants Belay and the Town of Union's motion for summary judgment, plaintiff "concedes" her First Amendment retaliation claim. (Pl.'s Opp'n (dkt. #57) 11.) The court, therefore, will enter judgment in defendants' favor on that claim as well, leaving only her unreasonable execution claim to be addressed in this opinion.

[2] Unless otherwise noted, the court finds the following facts are material and undisputed when construed in favor of plaintiff as the non-moving party.

Humane Officer under Wis. Stat. § 173.03. In her capacity as Humane Officer, Weitz was an employee of the Eau Claire County Humane Association. The Eau Claire County Humane Association is a § 501(c)(3) non-profit IRS entity that provides animal welfare, care, adoption, education and other related services to the Eau Claire County area, and by contract, specifically to the County itself.

Defendants Jodi S. Bohl and Cynthia Mather are veterinarians. Both are licensed to practice veterinary medicine in the State of Wisconsin, and for all times relevant to plaintiff's complaint, both were also employed at the Eau Claire Animal Hospital, in Eau Claire, Wisconsin.

Finally, during the relevant period, defendant Fred Belay was the duly elected and acting Town Board Chairperson for the Town of Union. His duties included enforcing the Town's Animal Control Ordinance.

### B. Inspection Warrant, Follow-Up Investigation and Search Warrant

At some point in late 2012 or early 2013, Town of Union Chairperson Fred Belay requested the County's Humane Officer Bekah Weitz's assistance in enforcing the Town's Animal Control Ordinance with respect to Teresa Hestekin's kennel. Belay then sent a letter to Hestekin, dated January 23, 2013, informing Hestekin of a planned February 5 inspection.[3] Because Hestekin did not ultimately consent to that inspection, however,

[3] In their proposed findings of fact, defendants Belay and the Town of Union set forth additional facts that preceded the February 5 inspection, including earlier citations issued against Hestekin that were dismissed. (Belay's PFOFs (dkt. #52) ¶¶ 8-10.) These defendants also submitted additional facts concerning citations issued from the February 5 inspection, though those licensing citations were subsequently dropped in light of the criminal prosecution. (*Id.* ¶¶ 21-22, 63.) However, these facts do not appear material to the execution of the April 4 search warrant.

Weitz was required in her capacity as humane officer to apply for and receive a special inspection warrant, which was issued on February 5, 2013. That same day, Weitz, accompanied by defendant Fred Belay, Town Supervisor Jeffrey Whyte, and an Eau Claire County deputy executed the special inspection warrant at Hestekin's kennel.

Finding the conditions inside the facility to be substandard and dangerous to the health, well-being and safety of the dogs, cats and two Macaws that were found inside, Weitz conducted a follow-up investigation, including consulting with Drs. Bohl and Mather. Specifically, she asked Bohl and Mather to review a video taken during the February 5 special inspection warrant execution. After they both agreed that the conditions were unsafe and unhealthy for the animals, Weitz further consulted with Eau Claire County Assistant District Attorney Michael Steuer and Eau Claire County Sheriff's Department Sergeant Mike Mayer, both of whom advised her that they believed probable cause existed for a search warrant.

In keeping with this advice, Assistant D.A. Steuer then drafted a search warrant application dated April 3, 2013, which Sergeant Mayer signed. (Knight Aff., Ex. 1 (dkt. #25-1). An Eau Claire County Circuit Court judge granted that application and issued a search warrant on April 4, 2013, providing:

> Now, therefore, you, Sgt. Mike Mayer, and other law enforcement personnel are hereby commanded to search the above-described premises for the above-described property and things, and to seize and search said property and things, and return this warrant within 48 hours before the said court to be dealt with according to law.

(*Id.*, Ex. 2 (dkt. #25-2) (all caps removed).)

### C. Execution of Search Warrant

The search warrant was executed at Hestekin's kennel that same day, April 4. Two deputies from the Eau Claire County Sheriff's Department Riewesthal and Behrandt accompanied Humane Officer Weitz. Other individuals present included a companion animal inspector with the Wisconsin Department of Agriculture, Trade and Consumer Protection, Town Chairperson Belay and Dr. Bohl. Dr. Mather also arrived after the start of the search.

When they arrived at the kennel, deputies Riewesthal and Behrandt advised Hestekin that they possessed a search warrant, provided her with a copy of it and entered the premises with Hestekin. After the deputies cleared the property -- including removing Hestekin and her family -- and advised Weitz that it was secure, she and the other individuals then entered the property.

Ultimately, Weitz removed and took custody of thirteen dogs, five cats, two Macaws and a deceased dog. Dr. Bohl consulted on the removal of the cats and dogs, and Dr. Mather consulted on the removal of the Macaws. Eau Claire County Deputy Riewesthal also consulted on the removal of the animals.

Weitz and Deputy Riewesthal similarly met with Hestekin to inform her that the animals were being removed. Town Chairperson Belay maintains, and plaintiff does not dispute, that his role was limited to carrying garbage bags that were used to collect evidence

and picking up and placing in those garbage bags items identified by Weitz and Dr. Bohl.[4]

**D. Criminal Proceeding**

On November 19, 2013, the Eau Claire County District Attorney's Office filed a complaint charging Hestekin with (1) four felony counts of mistreatment of an animal and (2) four misdemeanor counts of negligently providing improper animal shelter and sanitation standards. On November 20, 2015, Eau Claire County Circuit Court Judge Lenz orally granted a motion to suppress evidence obtained in the execution of the April 4, 2013, search warrant. (Knight Aff., Ex. 6 (dkt. #25-6).) The court subsequently issued written findings of facts and conclusions of law, supporting the earlier order on the motion to suppress. (*Id.*, Ex. 7 (dkt. #25-7).)

Judge Lenz found that "[t]he search warrant did not authorize the assistance of a Humane Officer or a veterinarian to accompany law enforcement on April 4, 2012," and

> [t]estimony at the motion hearing on May 11, 2015 presented to the Court that law enforcement officers were on the defendant's property on April 3, 2013, but did not supervise the assisting Humane Officer and veterinarian during the execution of the search, nor did the law enforcement officers seize the evidence that was taken from the defendant's property.

(*Id.* at p.2, ¶¶ 5-6.) Judge Lenz further found that "[t]he human officer and veterinarian conducted the search and seizure outside the presence of law enforcement." (*Id.* at p.2, ¶ 7.)

[4] As mentioned above, defendants offer a number of facts concerning: the condition of the removed animals; the determination to euthanize some of them; and Hestekin's subsequent petition to have the animals returned. The court need not recount these facts since they are not material to her challenge to the execution of the search warrant itself.

Relying on those findings and Wisconsin Chapter 173, the court concluded that the search was illegal, because it was not executed by a law enforcement officer, and as such, granted the motion to suppress the seized evidence. (*Id.* at p.2, ¶¶ 3-4.) Other portions of his opinion reference the United States Constitution, and specifically cases from other jurisdictions, holding that a search warrant executed without adequate law enforcement supervision violated the Fourth Amendment. (*Id.* at p.4, ¶¶ 14, 19.)

As the Eau Claire County's Humane Officer, Weitz advocated for the State of Wisconsin to pursue an appeal of Judge Lenz's ruling, but the State declined. As a result, all charges against Hestekin were dismissed on October 18, 2016.

OPINION

Plaintiff Hestekin's only remaining claim is that the execution of the April 4, 2013, search warrant violated her Fourth Amendment rights. As best the court can discern, plaintiff's claim rests on a lack of law enforcement supervision of the search and seizure described by Judge Lenz in granting the motion to suppress the underlying criminal action. The parties dispute whether this holding in state court precludes defendants' assertions as to the constitutionality of their search in defending against plaintiff's Fourth Amendment claim in this 42 U.S.C. § 1983 lawsuit.

**I. Preclusive Effect of State Court Suppression Ruling**

The determination of whether issue preclusion applies is governed by Wisconsin law. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998) ("Because a Colorado court rendered the default judgment, Colorado law governs

whether the judgment has issue-preclusive effect."); *see also* 28 U.S.C. § 1738 (full faith and credit statute). To determine whether issue preclusion applies, the court must first determine whether the issue was "actually litigated and determined by a valid and final judgment." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 772–73 (7th Cir. 2013) (quoting *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 497 N.W.2d 756, 762 (Ct. App. 1993)). Second, if that requirement is satisfied, then the court must consider whether "the determination is essential to the judgment." *Id.* And third, if that requirement is satisfied, then the court must consider whether it is "fundamentally fair" to apply issue preclusion. *Id.*

Here, Judge Lenz's ruling does not preclude defendants from challenging the constitutionality of the search under these factors. As an initial matter, his ruling did not rest on whether the search violated Hestekin's Fourth Amendment rights; rather, his decision rested on the requirements of a search under Wisconsin Chapter 173. Specifically, Judge Lenz relied upon the prohibition in Wis. Stat. § 173.07 that "a humane officer may not in the course of his or her duties . . . "[e]xecute a search warrant" unless he or she is "also a law enforcement officer." Wis. Stat. § 173.07(5)(a). While Judge Lenz discussed cases from other jurisdictions that referred to constitutional rights, his ruling did not discuss the Fourth Amendment or, at the very least, did not suggest that a constitutional violation was "essential to [his] judgment." *First Weber Grp.*, 738 F.3d at 772–73. Moreover, a finding of a state law violation does *not* give rise to a constitutional claim under § 1983. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws").

Finally, even if the constitutional issue was actually litigated *and* essential to the state court's judgment, it would be fundamentally unfair to preclude the defendants in this lawsuit from defending against the constitutional challenge based on Judge Lenz's decision on the motion to suppress evidence, particularly since unlike the plaintiff, none of the defendants were parties or even in control of the criminal prosecution in state court.

"Several factors may inform [this fundamental fairness] determination, including (1) whether the party could have obtained review of the judgment; (2) whether there have been changes in the law since the first action; (3) whether the claims in the two cases are 'distinct'; (4) whether there were significant differences in the quality or extensiveness of the proceedings; (5) whether the burdens of proof are different in the two cases; and (6) whether the party had an adequate opportunity and incentive to obtain a full and fair adjudication in the initial action." *Kelley v. Ahern*, 541 B.R. 860, 863 (W.D. Wis. 2015) (citing *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330–31 (1993)). Among these factors, most fundamentally, none of the named defendants here had the power to bring a criminal action. On the contrary, that decision was made by the State of Wisconsin. Moreover, defendant Weitz credibly avers that she advocated for appeal from Judge Lenz's decision, but that the State opted not to, undermining any finding that defendants had an "adequate opportunity and incentive to obtain a full and fair adjudication in the initial action." *Kelley*, 541 B.R. at 863. Moreover, the distinctions between a criminal and civil proceeding are fundamental to our system of justice, including most obviously the burden of proof undertaken by the State itself. Regardless, the court concludes that it would be fundamentally unfair to deny defendants the opportunity, for

the first time, to defend against plaintiff's claim by arguing in this lawsuit that the April 3, 2016, search did not violate Hestekin's rights under the Fourth Amendment.

**II. Unreasonable Execution Claim**

As to the merits of that claim, plaintiff does not challenge to the validity of the search warrant itself; instead, plaintiff's claim turns on the reasonableness of its execution, as it did before Judge Lenz. "The reasonableness requirement [of the Fourth Amendment] extends to the manner in which the search is conducted." *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 335 (7th Cir. 2011) (citing *Green v. Butler*, 420 F.3d 689, 694-95 (7th Cir. 2005)). The test for reasonableness of the execution of a warrant is whether an officer's actions were objectively reasonable under the circumstances. *See Los Angeles Cty., Cal. v. Rettle*, 550 U.S. 609, 614 (2007). It is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979).

There is very little case law on this type of Fourth Amendment claim, and even more limited caselaw under the Fourth Amendment as to unreasonableness of a law enforcement officer's delegation of search duties to non-law enforcement officers. In an appeal from a jury verdict in another animal seizure case brought in this court, the Seventh Circuit at least recognized a Fourth Amendment claim based on the lack of adequate supervision, explaining:

> Police can't be permitted, merely by virtue of having obtained a search warrant, to allow an untrained, unsupervised mob (however well-intentioned, as we may assume the animal-rights activists who conducted the search to have been) to conduct a search likely to result in gratuitous destruction of private

property because of the mob's lack of training and supervision.

*Petkus v. Richland Cty., Wis.*, 767 F.3d 647, 652–53 (7th Cir. 2014).

However, plaintiff's claim here fails to fit the contours of *Petkus* or other, similar challenges to the reasonableness of the execution of a search warrant for two core reasons. *First*, plaintiff does not allege that the five individuals who entered her kennel, searched its premises, and seized animals caused *any* physical damage to her property. As described in *Petkus*, as well as other cases discussing this type of Fourth Amendment challenge, the claim is necessarily premised on some actual injury caused by a lack of adequate supervision and participation by law enforcement officers in the execution of the search warrant. *See Petkus*, 767 F.3d at 651-52 (describing that a "property . . . in shambles" after the search and upholding the jury's verdict of a constitutional violation based on the negligence of the searchers and by the action of sheriff's deputies who "launched them [unsupervised] on the search"); *Dragonwood Conservancy, Inc. v. Felician*, No. 16-CV-534, 2019 WL 318400, at *11-12 (E.D. Wis. Jan. 24, 2019) (describing Fourth Amendment unreasonable execution of search warrant where property was "unreasonably damaged during the search"); *McCadd v. Murphy*, 763 F. Supp. 2d 1018, 1026 (N.D. Ill. 2010) (denying summary judgment to the officers because of evidence that the search "caused damage and left their home in disarray"). In contrast, plaintiff puts forward *no* evidence (or even an allegation) of property or other actionable damage to support this type of Fourth Amendment claim.[5]

[5] Of course, plaintiff originally challenged the seizure of her animals, but as she conceded in her briefing on a prior motion, that claim is now barred under *Rooker-Feldman* by earlier state civil court

*Second*, plaintiff's claim here is not brought against the law enforcement officers charged with proper execution of the search the warrant. Instead, her claims are against the *non*-law enforcement officers who were escorted onto the property to conduct the search under the apparent authority and supervision of Deputies Riewesthal and Behrandt. A claim under the Fourth Amendment for lack of adequate supervision has, therefore, generally depended on a challenge to the reasonableness of a law enforcement officer's actions, and, thus, any violation of the plaintiff's rights under the Fourth Amendment would appear to be grounded in the Deputies' alleged failure to supervise adequately any search or seizure conducted by the defendants in this case. Indeed, in *Petkus* and the other cases cited above, the Fourth Amendment claims were brought against the law enforcement officers based on their failure to supervise, not against the individuals conducting the search. This court could not identify any cases, and neither party directed the court to any cases, asserting Fourth Amendment claims against the individuals who conducted a search inadequately supervised or controlled by law enforcement officers.

On this record, he court is hard-pressed to discern what action by defendants under color of state law violated the Fourth Amendment, other than perhaps their apparent, objectively reasonable, if mistaken, belief that they were acting at the direction of a duly authorized law enforcement official to assist in conducting an orderly search for animals in obvious distress and seizure of the animals as appropriate. Said another way, if the defendants here conducted themselves in a manner that would not give rise to a claim

---

proceedings. (12/4/18 Op. & Order (dkt. #69) 6-8.)

against a law enforcement officer, as a reasonable trier of fact would appear compelled to find on this record, it is difficult to discern either injury or violation of the Constitution because the defendants were unquestionably better qualified to perform that function than the officers, and did so at the officers' direction, whether adequately supervised or not.

Perhaps this court would reach a different conclusion if any of the defendants had reason to doubt the officer's legal authority to conduct the search or delegate some portion of that authority to them, or having been delegated limited authority, ran wild, intruding on plaintiff's privacy, creating a disturbance or causing damage beyond that necessary to complete their charge, but *none* of that is in evidence here. Instead, defendants appear to have executed their limited, delegated authority responsibly and well, properly supervised or not, and this court can find no Fourth Amendment violation as a result.

For these reasons, plaintiff's Fourth Amendment claim likely fails as a matter of law, or at the very least under the doctrine of qualified immunity for lack of any law clearly establishing the illegality of these defendants' actions in reliance on the apparent authority to escort them on the property to conduct an orderly search. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011) ("The plaintiffs bear the burden of proving that the constitutional right was clearly established."). In their respective motions, defendants seek judgment in their favor on the basis that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). Whether a qualified immunity defense is available involves a two-part test to determine: (1) whether the facts alleged show defendants violated a constitutional right when viewed in the light most favorable to the party asserting the injury; and (2) whether those rights were clearly established at the time of the alleged violation. *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, even assuming that defendants' actions violated plaintiff's Fourth Amendment rights, plaintiff has failed to point to any caselaw or otherwise articulate any basis for finding that defendants' actions here -- accompanying law enforcement to Hestekin's property and searching and seizing animals as provided under the terms of the state warrant, albeit arguably without adequate law enforcement supervision -- would violate plaintiff's rights under the Fourth Amendment.

Accordingly, the court will grant judgment to defendants on plaintiff's sole remaining claim.

ORDER

IT IS ORDERED that:

1) Defendants Jodi S. Bohl, Cynthia Mathers, the Eau Claire County Humane Society and Bekah Weitz's motion for summary judgment (dkt. #42) is GRANTED.

2) Defendants Fred Belay and the Town of Union's motion for summary judgment (dkt. #48) is GRANTED.

3) The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 21st day of March, 2019.

BY THE COURT:

/s/

____________________________________

WILLIAM M. CONLEY
District Judge